IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICA D. SPADY,<br><br>                Plaintiff,<br><br>    v.<br><br>THE BETHLEHEM AREA SCHOOL DISTRICT, et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 12-6731 |

**OPINION**

**Slomsky, J.**                                                                                                                                                                           **July 30, 2014**

## I.    INTRODUCTION

This case arises from the December 2, 2010 death of fifteen year old Juanya Demore Spady, following events that took place at the school he attended. Two years later, on December 3, 2012, Juanya's mother, Mica D. Spady ("Plaintiff"), filed a Complaint on behalf of herself and Juanya's estate. (Doc. No. 1.) She filed suit against the Bethlehem Area School District, Superintendent Joseph J. Roy, Principal Harrison Bailey III, Physical Education teacher Carlton Rodgers, school nurses Susan Dalton, RN, and Kathleen M. Halkins, RN, and other unnamed Defendants including an English teacher ("Defendants"), raising various constitutional claims and state law causes of action.

On February 11, 2013, Defendants filed a Motion to Dismiss the Complaint. (Doc. No. 6.) A hearing on the Motion was held on March 15, 2013. The Motion was denied. (Doc. No. 14.) On March 25, 2013, Plaintiff filed an Amended Complaint. (Doc. No. 15.) In Counts I–V of the Amended Complaint, Plaintiff asserts that Defendants committed various constitutional violations, triggering civil liability under 42 U.S.C. § 1983 (commonly referred to

as "Section 1983").  She also brings state law claims against Defendants in Counts VI–IX.  On July 18, 2014, however, the parties stipulated that Plaintiff's claims against Defendants Joseph J. Roy, Harrison Bailey III, Susan Dalton, and Kathleen M. Halkins would be withdrawn.  (Doc. Nos. 51, 53.)  The parties further stipulated that Counts I, III, V–VII would be withdrawn as well.[1]  (Id.)

On June 24, 2014, remaining Defendants, the Bethlehem Area School District ("BASD") and Physical Education ("P.E.") teacher Carlton Rodgers ("Rodgers"), filed a Motion for Summary Judgment on Counts II and IV.  (Doc. Nos. 44-46.)  Plaintiff opposes the Motion (Doc. Nos. 48-50).  The Motion is now ripe for disposition by the Court.[2]

## II.   BACKGROUND

The undisputed facts of this case are undeniably tragic.  In November 2010, fifteen year old Juanya Spady transferred to Liberty High School in the Bethlehem Area School District.  (Doc. Nos. 15, 16 at ¶ 16.)  He was in the tenth grade.  On the morning of December 2, 2010, Juanya attended a P.E. swimming class led by Defendant Rodgers, the school gym teacher.  (Id. at ¶ 17.)  During the swim class, Juanya told Rodgers that he did not feel well.  (Id. at ¶ 18.)  He nonetheless participated in the swimming lesson.

After the swim class ended, Juanya went to English class.  (Id. at ¶ 23.)  During the class, the teacher heard a noise and noticed that Juanya's head was down on his desk.  (Doc. No. 16 at ¶ 24.)  He appeared to be having a seizure.  (Id.)  Observers noticed that Juanya's breathing

---

[1] The parties' stipulation states that if Defendants' Motion for Summary judgment is granted, Counts VIII and IX will be dismissed.  However, if the Motion is denied, those claims will remain.  (Doc. Nos. 51, 53.)

[2] In reaching its Opinion, the Court has considered the following: the Amended Complaint (Doc. No. 15), Defendants' Answer (Doc. No. 16), Defendants' Motion for Summary Judgment (Doc. No. 44), Plaintiff's Response in Opposition (Doc. No. 48), Defendants' Reply (Doc. No. 52), and all related filings and exhibits.

was labored.  (Doc. Nos. 15, 16 at ¶ 25.)  In addition, a pink, frothy substance came out of his nose and mouth.  (Id.)  Several students ran out of the classroom to obtain emergency medical assistance.  (Id. at ¶ 27.)  Around the same time, one of the school nurses, Susan Dalton, RN ("Dalton"), received a call that help was needed, and she went to Juanya's classroom.  (Id. at ¶ 28.)  Dalton spoke with another school nurse, Kathleen M. Halkins, RN ("Halkins"), over a radio and told her that 911 should be called because Juanya was "unresponsive."  (Id. at ¶ 31.)  Halkins then called 911.  (Id. at ¶ 32.)

Before Emergency Medical Services ("EMS") arrived, Dalton began to administer Cardiopulmonary Resuscitation ("CPR") on Juanya with the assistance of a teacher's aide.  (Id. at ¶ 36.)  Halkins came into the classroom and noticed that Juanya's breathing was labored and that he was unresponsive.  (Id. at ¶ 38.)  She administered two electric shocks to Juanya's chest with an Automated External Defibrillator ("AED").  (Id. at ¶ 40.)  After administering the second shock, Halkins resumed CPR.  (Id. at ¶ 42.)  The pink frothy substance increased and continued to bubble out of Juanya's nose.  (Id. at ¶ 41.)

When EMS personnel arrived, they cut off Juanya's clothes, attached their equipment to him with leads, took his vital signs, and took him out of the school on a stretcher.  (Id. ¶ 44.)  Juanya arrived at St. Luke's Hospital shortly after 11 a.m.  (Id. at ¶ 45.)  Emergency Room staff were unable to save him, and he was pronounced dead later that day.  (Id. at ¶ 48.)

Following these tragic events, Juanya's mother filed the instant civil rights lawsuit on behalf of his estate.  Presently, only Counts II, IV, VIII, and IX remain.  Count II alleges a Section 1983 claim against Rodgers, the P.E. teacher, for an alleged violation of Juanya's Fourteenth Amendment rights to personal security, life, liberty, and freedom from state created dangers and arbitrary government action which shocks the conscience.  Count IV includes a

Section 1983 municipal liability claim against BASD for its alleged deliberate indifference. Count VIII alleges a wrongful death claim. In Count IX, Plaintiff brings a survival action on behalf of Juanya's estate. On June 24, 2014, Defendants filed the Motion for Summary Judgment. (Doc. No. 44.) Plaintiff opposes the Motion. (Doc. Nos. 48.) For reasons that follow, the Court will deny Defendants' Motion.

### III. STANDARD OF REVIEW

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine whether "the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Favata v. Seidel, 511 F. App'x 155, 158 (3d Cir. 2013) (quoting Azur v. Chase Bank, USA, Nat'l Ass'n, 601 F.3d 212, 216 (3d Cir. 2010) (quotation omitted)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). For a fact to be considered "material," it "must have the potential to alter the outcome of the case." Favata, 511 F. App'x at 158. Once the proponent of summary judgment "points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." Id. (quoting Azur, 601 F.3d at 216 (internal quotation marks omitted)).

In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. (quoting Chambers ex

4

rel. Chambers v. Sch. Dist. of Philadelphia Bd. of Educ., 587 F.3d 176, 181 (3d Cir. 2009) (quotation omitted)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried.  Anderson, 477 U.S. at 247–249.  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party.  Id. at 255.  If there is no factual issue, and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

## IV.     ANALYSIS

Defendants contend that they are entitled to summary judgment on both of Plaintiff's Section 1983 claims in Counts II and IV.  They have not moved for summary judgment on Plaintiff's remaining state law claims.  The Court will briefly discuss Defendants' arguments regarding Counts II and IV, which include the Section 1983 claims against Defendant Rodgers and BASD, respectively.

### A.     Summary Judgment Will Be Denied On Plaintiff's Section 1983 Claim Against Defendant Rodgers in Count II

In Count II of the Amended Complaint, Plaintiff asserts that through his conduct, Defendant Rodgers, Juanya's P.E. teacher, violated Juanya's substantive due process rights to personal security, life, liberty, and freedom from state created dangers and arbitrary government action which shocks the conscience.  This claim arises under 42 U.S.C. § 1983, which "provides a cause of action for any person who has been deprived of rights secured by the Constitution or laws of the United States by a person acting under color of law."  Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007) (quoting Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002)).  State employees

embodying the authority of the state, are liable under Section 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity. Id.

Defendants contend that Plaintiff's Section 1983 claim against Defendant Rodgers cannot succeed because Rodgers is a state employee who is entitled to qualified immunity. (Doc. No. 44-1 at 18.) In a recent decision, the Supreme Court explained:

> The doctrine of qualified immunity protects government officials from liability for civil damages "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."

Wood v. Moss, 134 S. Ct. 2056, 2066-67 (2014) (quoting Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011)). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) cert. denied, 133 S. Ct. 41 (2012). The Third Circuit has explained further:

> A qualified immunity inquiry is two-pronged, though courts are free to address the two elements in whichever order they deem appropriate. Normally, however, in considering a qualified immunity issue, we will ask whether a defendant's conduct violated a [plaintiff's] statutory or constitutional rights before addressing whether that law had been established at the time of the violation so that the unlawfulness of the conduct should have been apparent to an objectively reasonable official.

Halsey v. Pfeiffer, No. 13-1549, 2014 WL 1622769, *9 (3d Cir. Apr. 24, 2014). See also Pearson v. Callahan, 555 U.S. 223 (2009). Defendants argue that both prongs of the qualified immunity test shield Rodgers from liability. The Court will first examine whether a constitutional violation has occurred.

Plaintiff contends that Rodgers violated various substantive due process rights of Juanya under the "state-created danger" doctrine. This doctrine is an exception to the general rule that state actors do not have an affirmative duty to protect citizens from third parties. See DeShaney

6

v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989) ("[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."). This general "no duty" rule applies in public schools. See, e.g., Morrow v. Balaski, 719 F.3d 160, 170 (3d Cir. 2013) cert. denied, 134 S. Ct. 824 (2013). The state-created danger theory, however, is an exception to this general rule and provides an avenue by which plaintiffs can establish Section 1983 liability. Under this doctrine, "liability may attach where the state acts to create or enhance a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." Id. at 177 (original emphasis) (citing Kneipp v. Tedder, 95 F.3d 1199, 1205 (3d Cir. 1996)).

In the Third Circuit, to prevail on a state-created danger theory, Plaintiff must prove each of the following four elements:

1) the harm ultimately caused was foreseeable and fairly direct;

2) a state actor acted with a degree of culpability that shocks the conscience;

3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Id. (citing Bright v. Westmoreland Cnty., 443 F.3d 276, 281 (3d Cir. 2006)).

There is at least one fact in dispute that has the potential to alter the outcome of Plaintiff's Section 1983 claim against Rodgers. First and foremost, the parties disagree over what caused Juanya's death. The day after Juanya died, Dr. Isidore Mihalakis performed an autopsy and attributed his death to "a seizure disorder the [cause] of which was not visually, microscopically,

or toxicologically apparent." (Doc. No. 49-1 at 3) (quoting from the medical examiner's report). However, Plaintiff's expert, Cyril H. Wecht, M.D., J.D., opined that "Juanya Spady died from delayed drowning[3] due to chemical-related toxicity produced by the swimming pool chlorine." (Id. at 5.) In addition, Defendant's expert, Wayne K. Ross, M.D., opined that Juanya died from congestive heart failure. (Doc. No. 46-4, Ex. 10 at 8.) The credibility of these expert witnesses is in dispute, and the cause of Juanya's death is a material fact for the jury to determine.

Aside from this factual dispute, it is disputed whether Rodgers affirmatively used his authority to create a danger to Juanya or render him more vulnerable to danger. In this case, it is undisputed that Juanya was not an experienced swimmer. (Doc. No. 45-1, Ex. 3 at 11:6–25, 33:6–10.) In fact, Juanya told Rodgers that he could not swim. (Id. at 26:16–21.) Furthermore, at some point on December 2, 2010, Juanya told Rodgers that he did not feel well. (Id. at 16:10–17, 23:3–20, 34:17–23.) Rodgers testified that he told Juanya that he could get out of the pool and go see the nurse if he wanted to. (Id. at 16:16–17, 35:1–11.) Defendants also submitted evidence that after Juanya got out of the pool, Rodgers never ordered him to get back in. Instead, Rodgers told Juanya that he could get back in if he felt better. (Id. at 24:2–4, 35:23–36:6, 42:23–25, 44:18–23, 45:4–16, 46:21-47:1.)

---

[3] Plaintiff asserts that Juanya's death was caused by a phenomenon known as "delayed" or "secondary" drowning. It may also be referred to as "dry" drowning, as opposed to the more common occurrence of "wet" drowning. While the issue of delayed drowning will likely be the subject of expert testimony at trial, Plaintiff has submitted a WebMD article to guide the Court's understanding of delayed drowning. (Doc. No. 54 at 3.) According to the article, 1-2% of all drownings occur out of the water. (Id.) It happens after someone inhales a small amount of water during a struggle. (Id.) This triggers airway muscles to spasm and makes breathing difficult. (Id.) In delayed drowning cases, fluid builds up in the lungs and causes trouble breathing. (Id.) A person experiencing this condition "can be out of the water and walking around normally before signs of dry drowning become apparent." (Id.) In fact, the symptoms of delayed drowning can appear hours after the water has been inhaled. (Id.) If untreated, delayed drowning can be fatal. (Id.)

Plaintiff has presented evidence to the contrary. She submitted deposition testimony obtained from a number of students who testified that Rodgers ordered Juanya to get back into the pool. (Doc. No. 49-3, Ex. 3 at 12:3–13:25; Doc. No. 49-4, Ex. 4 at 12:9–12; Doc. No. 49-5, Ex. 5 at 13:19–25.) These students also testified that Rodgers would deduct points from their P.E. grade if they did not get into the pool and swim, even if they were not feeling well. (Doc. No. 49-3, Ex. 3 at 14:6–16; Doc. No. 49-4, Ex. 4 at 16:22–18:6; Doc. No. 49-5, Ex. 5 at 15:18–24; Doc. No. 49-6, Ex. 6 at 16:7–18:22.)

By presenting this deposition testimony, Plaintiff has set forth specific evidence to show that a genuine issue of material fact exists and that a reasonable factfinder could rule in her favor with respect to the fourth element of the state-created danger test. See Azur, 601 F.3d at 216 (quoting Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999)). Specifically, there is a factual dispute over whether Rodgers affirmatively used his authority to compel Juanya to get back into the pool despite the fact that Juanya was not a strong swimmer and did not feel well that day. Moreover, whether the harm to Juanya was foreseeable, whether Juanya himself was a foreseeable victim, and whether Rodgers' conduct shocks the conscience are all questions of fact for a jury to answer. Because various, material, factual disputes must be resolved in order to determine whether Rodgers violated Juanya's constitutional rights on December 2, 2010, summary judgment is inappropriate.

While the Supreme Court of the United States has repeatedly stressed the importance of resolving qualified immunity issues before trial, the Court cannot do so when material facts are in dispute. Curley v. Klem, 499 F.3d 199, 208 (3d Cir. 2007). As outlined supra, determining whether a state actor is entitled to qualified immunity is a two-step process. The Plaintiff must demonstrate: (1) that the official violated a constitutional right, and (2) that the right was "clearly

established" at the time of the violation.  Wood, 134 S. Ct. at 2066-67.  Although the second prong of the inquiry is a question of law for the Court to answer, the Court is unable to do so without knowing whether a constitutional violation actually occurred.  As discussed above, this is a question of fact for the jury to resolve.  Curley, 499 F.3d at 211.  Therefore, the Court will not enter summary judgment in favor of Rodgers on the issue of qualified immunity.

       **B.**      **Summary Judgment Will Be Denied On Plaintiff's Section 1983 Claim Against Defendant BASD in Count IV**

In Count IV of the Amended Complaint, Plaintiff asserts that BASD was deliberately indifferent to the constitutional rights of students in failing to train P.E. teachers on how to instruct and supervise swimming lessons, and in failing to institute a formal swim program for teachers to follow.  Defendants contend that BASD is entitled to summary judgment on this claim because Plaintiff has failed to establish municipal liability.  (Doc. No. 441- at 22.)  For reasons that follow, the Court will deny summary judgment on this claim against BASD.

It is well-established that a municipal entity like BASD "cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability."  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)).  However, Section 1983 does not foreclose municipal liability entirely.  In order for BASD to be liable, Plaintiff must identify a relevant BASD policy or custom that caused the alleged constitutional violation.  Id. at 583-84 (citing Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997)).  According to the Third Circuit:

> Where the policy concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact. Additionally, the identified deficiency in a city's training program must be closely related to the ultimate injury; or in other words, the deficiency in training [must have] actually caused the constitutional violation.

Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (internal quotations omitted).

Deliberate indifference is a stringent standard which requires a Section 1983 plaintiff to prove that "a municipal actor disregarded a known or obvious consequence of his action." Id. at 223 (quoting Brown, 520 U.S. at 410). Usually, a plaintiff must demonstrate that there is "[a] pattern of similar constitutional violations by untrained employees" in order to establish deliberate indifference. Id. (quoting Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011)). However, in certain situations, the need for training may "be 'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference' to constitutional rights even without a pattern of constitutional violations." Id. (City of Canton, Ohio v. Harris, 489 U.S. 378, 390 n.10 (1989)). See also Berg v. Cnty. of Allegheny, 219 F.3d 261 (3d Cir. 2000) (denying summary judgment where material fact questions remained on plaintiff's claims against municipality). This is known as single-incident liability. See id. at 224.

In this case, Plaintiff has not set forth any evidence of a pattern of near-death or delayed drownings at Liberty High School or any other BASD school. Therefore, the Court presumes that Plaintiff is proceeding based on a single-incident theory of liability. She alleges that the combination of BASD's failure to train P.E. teachers on how to instruct and supervise swimming lessons and the lack of a formal BASD swim program led to Juanya's death. (Doc. No. 50 at 25.)

Defendants contend that BASD was not deliberately indifferent to an obvious risk of a constitutional violation and point to the fact that BASD had a policy in place which required its P.E. teachers overseeing swimming classes to be certified lifeguards. (Doc. No. 44-1 at 24.) In addition, Liberty High School had a certified student lifeguard present during all swimming classes. (Id.) However, BASD did not have its own training program, and Defendant Rodgers

did not knowing anything about delayed or secondary drowning at the time of Juanya's death, including what symptoms to look for. (Doc. No. 45-1, Ex. 3 at 17:24–18:8, 29:7–30:21.)

In support of her claim that BASD failed to provide adequate training to P.E. teachers like Rodgers, Plaintiff submitted an expert report from an aquatics consultant, Alison Osinsky, Ph.D. (Doc. No. 49-2, Ex. 2.) In her report, Dr. Osinsky opined that, inter alia:

> Although delayed or second drowning is a rare occurrence (compared to active wet drowning), it is a known risk of swimming and any individual who works in an aquatic environment should be familiar with the subject. Aquatic professionals should recognize the symptoms exhibited by an individual who accidentally aspirates water into his lungs, and seek immediate medical care for the victim.

(Id. at 9.) To the contrary, Defendants' aquatics expert, Tom Griffiths, Ph.D., reviewed lifeguarding texts from the American Red Cross, the YMCA, and StarGuard Aquatics, finding that none of them mentioned, or alluded to, delayed or secondary drowning. (Doc. No. 46-4, Ex. 10 at 5.) According to Dr. Griffiths, this phenomenon is also not discussed at water safety conferences or symposiums. (Id. at 6.) He ultimately opined that there was nothing BASD could have done to prevent Juanya's sudden death on December 2, 2010. (Id. at 7.)

As noted above, Plaintiff and Defendants disagree over what actually caused Juanya's death. Aside from this material fact, the credibility of both expert witnesses is also in dispute. Thus, a genuine dispute remains as to whether BASD was deliberately indifferent to an obvious risk of harm when it failed to train Rodgers and other personnel about the existence of delayed drowning and its attendant symptoms. A jury must resolve these issues, and therefore, summary judgment is inappropriate on Plaintiff's municipal liability claim.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment will be denied. An appropriate Order follows.