IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICA D. SPADY,<br><br>                Plaintiff,<br><br>v.<br><br>THE BETHLEHEM AREA SCHOOL DISTRICT, et al.,<br><br>                Defendants. | CIVIL ACTION<br>NO. 12-6731 |

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................... 2

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................................ 2

III.  DEFENDANT'S MOTION FOR RECONSIDERATION ............................................ 6

    a.  Standard of Review on Motions for Reconsideration ...................................... 6

    b.  BASD's Motion for Reconsideration Will Be Granted .................................... 7

        i.   The Third Circuit's Decision Involves a Change in
           Controlling Law ................................................................................ 7

        ii.  Despite The Change in Controlling Law, The Court's Decision
           That There Was a Genuine Issue of Material Fact as to Whether a
           Constitutional Violation Occurred Was Not an Error of Law ........................ 9

IV.  DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ................................... 11

    a.  Standard of Review on Motions for Summary Judgment ............................ 11

    b.  BASD's Motion for Summary Judgment Will Be Denied ........................... 12

V.   CONCLUSION ................................................................................................... 16

**OPINION**

**Slomsky, J.** November 30, 2016

## I. INTRODUCTION

Defendant Bethlehem Area School District ("BASD") requests that the Court reconsider its Order entered on July 30, 2014 denying summary judgment. (Doc. No. 74.) In the Motion for Reconsideration, BASD argues that in view of the Third Circuit's decision in this case (Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633 (3d Cir. 2015)), there was no underlying deprivation of a constitutional right to support Plaintiff's claim under 42 U.S.C. § 1983. (Doc. No. 74 at 3.) Without an underlying constitutional violation, BASD argues that its Motion for Summary Judgment should be granted. For reasons that follow, BASD's Motion for Reconsideration will be granted because there has been a change in controlling law, but its Motion for Summary Judgment will be denied because the change does not warrant that summary judgment be granted.

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Defendant BASD asks the Court to reconsider its Order denying summary judgment. (Doc. No. 74.) In this case, Plaintiff Mica Spady instituted this action to recover damages from BASD, as well as individual teachers and school officials, for the death her son, Juanya Spady. (Doc. No. 1.) She claims that BASD and its teachers committed violations of her son's civil rights under 42 U.S.C. § 1983. (Doc. No. 15.) Spady also raised a state law claim of wrongful death and a survival action against Defendants. (Id.)

As stated on other occasions, the facts of this case are undeniably tragic. In November 2010, fifteen-year-old Juanya Spady transferred to Liberty High School in the Bethlehem Area School District. (Id. at ¶ 16.) As a tenth-grade student, Juanya was enrolled in a physical

education ("P.E.") class taught by Carlton Rodgers. (Id. at ¶ 17.) Rodgers had been a full-time P.E. teacher for BASD for four years and was a certified lifeguard. (Id. at ¶ 10.)

As part of the P.E. curriculum, students participated in a two-week swimming course at Liberty High School. (Doc. No. 46 at ¶ 2.) During the last week of November 2010, Juanya's class began the swimming program. The swimming course required both swimmers and non-swimmers to remain in the pool during the entire time the class was in session. (Id. at ¶ 5.) If students did not comply with the course policy, points would be deducted from their overall P.E. grade. Rodgers knew that Juanya could not swim.

Swimming classes were conducted with Rodgers standing at the side of the pool instructing the students for approximately twenty minutes on a specific stroke. (Id. at ¶¶ 6-7.) After the twenty minute lesson was completed, students were able to swim freely in the pool for the remainder of the period. (Id.) Non-swimming students were permitted to stay in the shallow end of the pool for the entirety of the class. (Id.) They also were free to venture into deeper areas by holding onto the side of the pool, a practice referred to as "gutter grabbing." In addition to Rodgers, a student lifeguard was on duty who monitored students in the pool. (Id. at 6.)

On December 2, 2010, Juanya attended P.E. class. (Doc. No. 15 at ¶ 16.) Juanya entered the pool and swam in the shallow end for the first ten or fifteen minutes of class while Rodgers instructed students from the side of the pool. After the lesson, Juanya left the shallow end of the pool and began to "gutter grab" his way around the edge of the pool. While in the deep end, he ran into a group of students and was submerged for a few seconds, where he possibly inhaled water. (Id. at ¶ 21.) Juanya then exited the pool and told Rodgers that his chest hurt. (Id. at ¶ 22.) Rodgers allowed Juanya to sit on the bleachers for a few minutes.

Several minutes later, Rodgers went to check on Juanya, who requested permission to stay out of the pool for the remainder of class. Rodgers denied the request and instructed him to get back into the water. Juanya followed these instructions and stayed in the shallow end for the remainder of class. (Doc. No. 46 at ¶ 17.) The students left the pool at approximately 9:00 a.m. and proceeded to the locker room to change. (Doc. No. 15 at ¶ 23.)

A few minutes later, Juanya reported to English class. (Id.) His teacher noted that he was attentive. Abruptly, around 10:30 a.m., nearly an hour and a half after he left the pool, Juanya fell backward from his seat and began to have a seizure. (Id. at ¶ 24.) His teacher observed labored breath, general unresponsiveness, and a "pink, frothy fluid" escaping from Juanya's nose and mouth. (Id. at ¶ 25.) A school nurse attempted to revive Juanya while emergency medical assistance was called. (Id. at ¶ 36.) Upon their arrival, paramedics attended to Juanya and transported him to St. Luke's Hospital. (Id. at 45-46.) He died later that day. (Id. at ¶ 48.)

Juanya died from a condition known as "delayed drowning," "dry drowning," or "secondary drowning," which can occur when a small amount of water or fluid is inhaled into the lungs. (Doc. No. 54 at 3.) If the fluid is not removed, the lungs begin to spasm, causing a build-up of other fluids, which in turn can cause the victim to asphyxiate because the lungs cannot oxygenate the individual's blood. (Id.) This condition can cause death anywhere from an hour to a day after the initial inhalation of fluid, and is extremely rare. (Id.) In fact, it accounts for only 1% to 2% of drownings. (Id.)

On December 3, 2012, Mica Spady, Juanya's mother, filed this civil rights action against various parties, including Rodgers and BASD. (Doc. No. 1.) On February 11, 2013, Defendants filed a Motion to Dismiss the Complaint. (Doc. No. 6.) A hearing on the Motion was held on

March 15, 2013.  The Motion was denied.  (Doc. No. 14.)  On March 25, 2013, Plaintiff filed an Amended Complaint.  (Doc. No. 15.)  In Counts I-V of the Amended Complaint, Plaintiff asserts that Defendants committed various constitutional violations, triggering civil liability under 42 U.S.C. § 1983 (commonly referred to as "Section 1983").  (Id.)  She also raised state law claims against Defendants in Counts VI-IX.  (Id.)  On July 18, 2014, the parties stipulated that Plaintiff's claims against some named Defendants would be withdrawn.[1]  (Doc. Nos. 51, 53.)  The parties further stipulated that Counts I, III, V-VII would be withdrawn as well.[2]  (Id.)

On June 24, 2014, Defendants Rodgers and BASD moved for summary judgment.  (Doc. Nos. 44, 46.)  Rodgers asserted that qualified immunity precluded liability.  (Doc. No. 46.)  BASD contended that summary judgment should be granted because Plaintiff failed to establish municipal liability.  (Doc. No. 44 at 22.)  On July 30, 2014, in an Opinion and Order, this Court denied Defendants' Motion for Summary Judgment, concluding that a genuine issue of material fact existed as to whether Rodgers violated Plaintiff's constitutional rights and whether BASD, as a municipality, did so too.  (Doc. Nos. 57, 58.)

On September 1, 2015, the Third Circuit Court of Appeals decided the appeal by Rodgers of the denial of his motion for summary judgment.  This Court was instructed to reverse its decision and award Rodgers summary judgment.  (Doc. No. 63.)  As a result, BASD is the only remaining Defendant in this case.  Relying on the Third Circuit's decision, BASD now requests

---

[1] The parties stipulated that Plaintiff's claims against Defendants Joseph J. Roy, Harrison Bailey III, Susan Dalton, and Kathleen M. Halkins would be withdrawn.

[2] The parties' stipulation stated that if Defendants' Motion for Summary Judgment is granted, Counts VIII and IX will be dismissed.  If the Motion is denied, those claims will remain.

that the Court reconsider the denial of its Motion for Summary Judgment.  (Doc. No. 74.)  This Motion for Reconsideration is now ripe for review.[3]

### III.   DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant BASD requests that the Court reconsider its Order dated July 30, 2014, in which the Court found a genuine dispute of material fact regarding Plaintiff's municipal liability claim against BASD.  (Doc. No. 74.)  BASD alleges that reconsideration is warranted because there has been an intervening change in controlling law.  (Doc. No. 74-4 at 12.)  BASD also contends that reconsideration is appropriate here "in order to correct errors of law and fact in the Court's July 30, 2014 decision and to prevent manifest injustice."  (Id.)  For the following reasons, this Court will grant BASD's Motion for Reconsideration, but will deny its Motion for Summary Judgment.

#### a.   Standard of Review on Motions for Reconsideration

"The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence."  Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999) (quotation omitted)).  Thus, a proper motion for reconsideration "must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice."  Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)).  However, "[a] motion for reconsideration

---

[3] In reaching its conclusion, the Court has considered the following: Defendant's Motion for Reconsideration (Doc. No. 74), Plaintiff's Brief in Opposition to Defendant's Motion for Reconsideration (Doc. No. 75), Defendant's Reply Brief in Support of its Motion for Reconsideration (Doc. No. 76), Plaintiff's Supplemental Memorandum (Doc. No. 79), Defendant's Supplemental Memorandum (Doc. No. 80), and the Opinion of the Third Circuit in this case.

'addresses only factual and legal matters that the Court may have overlooked. It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly.'" In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 637, 640 (E.D. Pa. 2010) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)). Therefore, "[m]ere dissatisfaction with the Court's ruling . . . is not a proper basis for reconsideration." Progressive Cas. Ins. Co. v. PNC Bank, N.A., 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999). Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." In re Asbestos Products Liab. Litig. (No. VI), 801 F. Supp. 2d 333, 334 (E.D. Pa. 2011) (quoting Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995)). Moreover, where the Third Circuit has instructed this Court on the specific constitutional right at issue, "justice requires a more searching review of the original motion [for summary judgment] to see whether the results must be changed." D'Argenzio v. Bank of America Corp., 877 F. Supp. 2d 202, 207 (D.N.J. 2012).

      **b.**  **BASD's Motion for Reconsideration Will Be Granted**

BASD argues that the Court should reconsider its Order denying summary judgment. (Doc. No. 74-4 at 12.) Specifically, BASD contends that reconsideration is appropriate here because there has been an intervening change in controlling law, and there is a need to correct an error of law and prevent manifest injustice. (Id.)

      **i.**  **The Third Circuit's Decision Involves a Change in Controlling Law**

BASD argues that reconsideration of the Court's Order dated July 30, 2014 is appropriate here because there has been an intervening change in controlling law. (Id.) BASD argues that

an intervening change in controlling law arose when the Third Circuit ordered that summary judgment should be granted in favor Rodgers. (Id.)

On July 30, 2014, this Court entered an Opinion and Order denying both Defendant BASD and Rodgers' Motion for Summary Judgment. (Doc. Nos. 57-58.) In the Opinion, the Court found genuine issues of material fact regarding whether Juanya's constitutional rights were violated. (Doc. No. 57 at 10.) With respect to Rodgers, the Court found that there was a genuine issue of whether Rodgers was entitled to qualified immunity. (Id.)

Courts use a two-pronged inquiry to decide whether an individual is protected by qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). First, the court must decide "whether the facts that a plaintiff has . . . shown make out a violation of a constitutional right." Pearson v. Callahan, 555 U.S. 223, 232 (2009). Second, the court must determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. (citation omitted). A court may begin its consideration with either prong. Id. at 236. This Court began its analysis with the first prong and concluded that "although the second prong of the inquiry is a question of law for the Court to answer, the Court is unable to do so without knowing whether a constitutional violation actually occurred." (Id.) The Court did not identify the specific constitutional right at issue, and did not come to a conclusion as to whether this right was violated.

On appeal, the Third Circuit began with the second prong and described the constitutional right at issue at this case. Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 638-40 (3d Cir. 2015). It explained that Plaintiff's Section 1983 claim is derived from the Due Process Clause of the Fourteenth Amendment, which establishes that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law[.]" Id. at 638 (quoting U.S. Const. amend.

XIV, § 1). Plaintiff argued that this Clause covers an individual's "constitutional right to bodily integrity." (Doc. No. 79 at 1.) Although the Third Circuit acknowledged that there is generally a right to bodily integrity under the Due Process Clause, it cautioned that courts should not define the constitutional right with a high level of generality but instead "'must define the right allegedly violated at the appropriate level of specificity.'" Spady, 800 F.3d at 638 (quoting Sharp v. Johnson, 699 F.3d 144, 159 (3d Cir. 2012)). Discerning the constitutional right at issue here, it stated:

> In this case, the specific context is a student who experiences a brief submersion under water, exits the pool and complains of chest pain, is ordered to return to the pool after a several-minute respite, then stays in the shallow end of the pool for the remainder of the class, and does not exhibit signs of serious distress until more than one hour later. The specific constitutional right under the Due Process Clause in this context is the right to affirmative intervention by the state actor to minimize the risk of secondary dry drowning. And, for qualified immunity purposes, the question is whether the law in this context was so well-established that it would have been apparent to a reasonable gym teacher that failure to take action to assess a non-apparent condition that placed the student in mortal danger violated that student's constitutional right . . .

Id. at 638-39. As quoted, the Third Circuit found that the constitutional right at issue was "the right to affirmative intervention by the state actor to minimize the risk of secondary dry drowning." Id. But it did not determine whether this constitutional right was violated.

Given the Third Circuit's description of the constitutional right at issue which had never been so defined, this Court finds that there has been an intervening change in controlling law which makes BASD's Motion for Reconsideration appropriate for review.

### ii. Despite The Change in Controlling Law, The Court's Decision That There Was a Genuine Issue of Material Fact as to Whether a Constitutional Violation Occurred Was Not an Error of Law

In view of the Third Circuit's description of the constitutional right applicable here, BASD contends that this Court's decision denying its summary judgment was based on an error

9

of law and therefore was manifestly unjust. (Doc. No. 74-4 at 12.) BASD argues that the Court's earlier determination that there was a genuine issue of material fact as to whether Juanya's constitutional rights were violated by BASD was an error of law. (See id. at 15, 17.) This Court disagrees for reasons that follow.

The Third Circuit did describe the specific constitutional right at issue. Spady, 800 F.3d at 638. It did not decide, however, whether Rodgers or BASD did in fact violate Juanya's constitutional right. Id. The Third Circuit stated as follows:

> Here, the District Court began with the first prong and analyzed Spady's constitutional claim under the state-created-danger theory, which is an exception to the general rule that "[t]here is no affirmative right to governmental aid or protection under the Due Process Clause of the Fourteenth Amendment." *Ye v. United States,* 484 F.3d 634, 636 (3d Cir. 2007) (citing *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.,* 489 U.S. 189 (1989)). We adopted this exception in *Kneipp v. Tedder,* where we explained that a plaintiff must show the following:
>
>> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the state and the plaintiff; (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the [harm] to occur.
>
> 95 F.3d 1199, 1208 (3d Cir.1996) (quoting *Mark v. Borough of Hatboro,* 51 F.3d 1137, 1152 (3d Cir.1995)). As reflected in the District Court's opinion, the state-created-danger analysis necessitates a fact-intensive inquiry.
>
> *Pearson* recognized, however, that there are instances where a case is most easily resolved by addressing whether the right was clearly established at the time of the alleged violation. *See* 555 U.S. at 237; *Werkheiser v. Pocono Twp.,* 780 F.3d 172, 176 (3d Cir. 2015). We conclude this is such a case and will address the second prong of the qualified immunity analysis at the outset.
>
> Before deciding whether the constitutional right Spady relies upon was clearly established, we must first frame the precise contours of that right.

Id. at 638-39. The Court of Appeals then described the constitutional right at issue and found that this right was not clearly established for qualified immunity purposes. Id. at 640. It did not

decide whether this constitutional right was violated. In fact, it noted, "issues of fact may preclude a definitive finding on the question of whether the plaintiff's rights have been violated." Id. at 637, n.4.

For this reason, this Court concludes that reconsideration is appropriate to ensure that BASD's Motion for Summary Judgment is reviewed with the proper constitutional right in mind. However, an error of law or manifest injustice did not occur when this Court found that the question of whether Juanya's constitutional rights were violated by BASD is one of fact best left to a jury.

## IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BASD argues that upon reconsideration, this Court should grant its earlier Motion for Summary Judgment. (Doc. No. 74.)

### a. Standard of Review on Motions for Summary Judgment

Granting summary judgment is an extraordinary remedy. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reaching this decision, the court must determine "whether the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact and whether the moving party is therefore entitled to judgment as a matter of law." Macfarlan v. Ivy Hill SNF, LLC, 675 F.3d 266, 271 (3d Cir. 2012) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). A disputed issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable factfinder could find for the non-moving party. Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A factual dispute is "material" only if it might affect the outcome of the suit under governing law. Doe v. Luzerne Cty., 660 F.3d 169, 175 (3d Cir. 2011) (citing Gray v.

11

York Papers, Inc., 957 F.2d 1070, 1078 (3d Cir. 1992)).  The Court's task is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. Anderson, 477 U.S. at 247-49.

In deciding a motion for summary judgment, the Court must view the evidence and all reasonable inferences from the evidence in the light most favorable to the non-moving party. Macfarlan, 675 F.3d at 271; Bouriez v. Carnegie Mellon Univ., 585 F.3d 765, 770 (3d Cir. 2009).  Whenever a factual issue arises which cannot be resolved without a credibility determination, at this stage the Court must credit the non-moving party's evidence over that presented by the moving party.  Anderson, 477 U.S. at 255.  If there is no factual issue and if only one reasonable conclusion could arise from the record regarding the potential outcome under the governing law, summary judgment must be awarded in favor of the moving party.  Id. at 250.

### b. BASD's Motion for Summary Judgment Will Be Denied

BASD contends that it is entitled to summary judgment because Plaintiff has failed to establish municipal liability.  (Doc. No. 74-4 at 12.)  To the contrary, Plaintiff submits that summary judgment should be denied because genuine issues of material fact exist regarding the municipal liability claim.  (Doc. No. 75.)  This Court agrees with Plaintiff and finds that summary judgment would be inappropriate at this time.  There are genuine issues of material fact as to whether BASD was deliberately indifferent to Juanya Spady's constitutional right in failing to train employees about the risks of dry drowning, and whether the failure to train caused Juanya's death.

To establish a claim under Section 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or the laws of the United States committed by a person acting under color of state law.  Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).  A plaintiff seeking

to hold a municipal entity liable under Section 1983 "must demonstrate that the violation of rights was caused by the municipality's policy or custom." [4] Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014).

The Third Circuit has explained that, where the policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." Id. "The identified deficiency in a [municipal entity's] training program must be closely related to the ultimate injury;" or, in other words, "the deficiency in training [must have] actually caused" the constitutional violation. See City of Canton v. Harris, 489 U.S. 378, 391 (1989) (holding that the municipality was deliberately indifferent in failing to train its

---

[4] Municipal entities cannot be held responsible for the acts of employees under a theory of respondeat superior or vicarious liability. Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583 (3d Cir. 2003) (citing Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978)). Rather, a plaintiff who seeks to hold a municipal entity liable must demonstrate that the violation of constitutional rights was caused by the municipal entity's policy or custom. Thomas, 749 F.3d at 222.

Not all state action will rise to the level of a policy or custom. Natale, 318 F.3d at 583. A government policy is made "when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Defreitas v. Montgomery Cty. Corr. Facility, 525 F. App'x 170, 177 (3d Cir. 2013). In contrast, a custom is "an act that has not been formally approved by an appropriate decisionmaker, but that is so widespread as to have the force of law." Id.

There are three situations where acts of an employee "may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." Natale, 318 F.3d at 584. The first is where the appropriate entity promulgates a generally applicable statement of policy and the subsequent acts complained of is simply an implementation of that policy. Id. (citing Board of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 417 (1997)). The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." Id. The third situation arises when "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Id. (quoting Bryan Cty., 520 U.S. at 417-18).

13

employees on determining whether detainees needed medical care, and remanding the case to determine if municipal liability ought to be imposed).

Deliberate indifference is a stringent standard which requires a plaintiff to prove that "a municipal actor disregarded a known or obvious consequence of his action."[5] Thomas, 749 F.3d at 223. Usually, a plaintiff must demonstrate that there is a "pattern of similar constitutional violations by untrained employees" to establish deliberate indifference. Id. (quoting Connick v. Thompson, 563 U.S. 61, 62 (2011)). However, in certain situations, the need for training may be "'so obvious,' that failure to do so could properly be characterized as 'deliberate indifference'" to an individual's constitutional rights even without a pattern of constitutional violations. Id. (quoting Canton, 489 U.S. at 390, n.10). This is known as single-incident liability. Id. at 224 (citing Connick, 563 U.S. at 75).

Here, Plaintiff's municipal liability claim against BASD arises under 42 U.S.C. § 1983 and relies on a failure to train theory. Plaintiff proceeds under a theory of single-incident liability because there is no evidence of a pattern of near-death or dry drownings at Liberty High School. She alleges that BASD failed to train its employees on the risks of dry drowning, that this failure to train caused Juanya's death, and that, as a result, Juanya's constitutional rights were violated. (Doc. Nos. 15, 74, 79.)

Plaintiff points out that BASD did not have its own formal training program for employees informing them on how to instruct swim classes. In fact, Plaintiff asserts that BASD did not inform employees of the risk of dry drowning at all. (Doc. No. 45-1, Ex. 3 at 18:21-25.) Rodgers himself was not aware of this risk. (Doc. No. 45-1, Ex. 3 at 17:24-18:8, 29:7-30:1.)

---

[5] This stringent standard exists because, in enacting § 1983, "Congress did not intend [for] municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." Bryan Cty., 520 U.S. at 415.

14

Plaintiff also relies on evidence from Alison Osinski, Ph.D., a nationally recognized aquatics expert. (Doc. No. 49-2, Ex. 2.) Dr. Osinski opined that BASD did not properly train its employees on the risks of dry drowning. (Id. at 9.) Dr. Osinski wrote:

> Although delayed or secondary dry drowning is a rare occurrence (compared to active or wet drowning), it is a known risk of swimming and any individual who works in an aquatic environment should be familiar with the subject. Aquatic professionals should recognize the symptoms exhibited by an individual who accidentally aspirates water into his lungs, and seek immediate medical care for the victim.

(Doc. No. 75 at 4.) Dr. Osinski further stated that Rodgers "was not provided guidance in how to teach the unit by the . . . school district" and "did not receive training in how to recognize symptoms of delayed drowning." (Id. at 3-4.) As a result, Dr. Osinski wrote that "[h]ad the teacher been better trained to instruct and supervise high school aged students in an aquatic setting, had the swimming class been structured and taught following generally accepted educational practices, and had the students been supervised in accordance with practices and standards that are well accepted in the aquatic industry, Juanya Spady's death could have been prevented." (Doc. No. 49-2 at 8-9.)

Through Dr. Osinski's report, Plaintiff has shown that BASD did not have its own training program to instruct employees on swimming pool safety, and that Rodgers did not know anything about dry drowning at the time of Juanya's death. (Doc. No. 45-1, Ex. 3 at 17:24-18:8, 29:7-30:21.) Plaintiff argues it follows, a fortiori, that failing to train teachers about relevant safety hazards for a school swimming curriculum is 'so obvious' that BASD's failure to train its employees on these risks amounts to deliberate indifference. She asserts that this failure to train caused Juanya's death, and that, as a result, BASD violated Juanya's constitutional right "to affirmative intervention by the state actor to minimize the risk of secondary dry drowning." Spady v. Bethlehem Area Sch. Dist., 800 F.3d 633, 638 (3d Cir. 2015).

15

In contrast, BASD contends that it was not deliberately indifferent to an obvious risk of a constitutional violation, and points to the fact that it had a policy in place which required its P.E. teachers overseeing swimming classes to be certified lifeguards. (Doc. No. 44-1 at 24.) BASD also notes that Liberty High School had a certified lifeguard present during all swimming classes. (Id.) BASD relies on the expert report of Thomas Griffiths, Ph.D., who opines that because the rare phenomenon of dry drowning is not mentioned in any authoritative water safety texts and is not discussed at prominent conferences, it is not taught as a standard of which lifeguards must be aware. (Doc. No. 46-4, Ex. 10 at 5-6.) BASD uses Dr. Griffiths's opinion to demonstrate that it did not fail to properly train its employees on swim safety. Defendant also uses the expert report to argue that any "failure to train" did not cause Juanya's death, and that Defendant did not violate Juanya's constitutional rights. BASD notes that Dr. Griffiths ultimately opined that there was nothing BASD could have done to prevent Juanya's death. (Id. at 7.)

Given the evidence presented and especially the experts' conflicting opinions, there are facts and credibility determinations that a jury must decide. First, there is a genuine issue of material fact regarding whether BASD was deliberately indifferent in failing to train its employees about the risks of dry drowning. Second, there is a genuine issue of material fact as to whether this failure to train actually caused Juanya's death. Third, there is a fact question as to whether BASD violated Juanya's constitutional right to affirmative intervention by a state actor to minimize the risk of dry drowning. Therefore, summary judgment is inappropriate.

## V.     CONCLUSION

For the foregoing reasons, Defendants' Motion Reconsideration of the Court's Order dated July 30, 2014 Denying Summary Judgment (Doc. No. 74) will be granted. However, upon

reconsideration, Defendant's Motion for Summary Judgment will be denied. An appropriate Order follows.